IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| MELVIN SANDERS  )<br>      )<br>     Plaintiff,  )<br>  v.      ) <br>      )<br>CITY OF MARYLAND HEIGHTS,  )<br>MISSOURI;     )<br>      )<br>P.O. JOHN PORTLOCK, DSN-141;  )<br>      )<br>P.O. KEVIN STEWART, DSN-026;  )<br>      )<br>P.O. CHRIS WEGMAN, DSN-175; and )<br>      )<br>P.O. SAM STARK, DSN-222;   )<br>      )<br>     Defendants.  ) | Cause No.:  4:14-CV-00238-TCM<br><br>JURY TRIAL DEMANDED |

## SECOND AMENDED COMPLAINT

**COME NOW** Plaintiff, and for his Amended Complaint, states as follows:

## JURISDICTION AND VENUE

1. This Court has "federal question" jurisdiction under 28 U.S.C. §1331 as Plaintiff alleges violations of the Civil Rights Act. 42 U.S.C. §1983. Venue is proper under 28 U.S.C. §1391 as Defendants are subject to personal jurisdiction in this Eastern District of Missouri , Plaintiff and Defendants reside here, and the events giving rise to Plaintiff's claims occurred here.

## COUNT I

## Section 1983 – City of Maryland Heights

**COMES NOW** Plaintiff Melvin Sanders and for Count I of his Complaint against Defendant City of Maryland Heights, states as follows:

2. Plaintiff Melvin Sanders is, and was at all relevant times, a citizen and resident of the State of Missouri married to Patricia Sanders and living with her at their residence in Maryland Heights, St. Louis County, Missouri,

3. Dennis R. Stephens is, or was at relevant times, a repossession agent engaged in the business of locating and later arranging for the repossession of vehicles and was an employee of a company engaged in the business of enforcing security agreements by repossessing vehicles pledged as collateral for loans.

4. Defendant City of Maryland Heights, Missouri is a city or municipal corporation of the State of Missouri which employs the Maryland Heights Police Department and provides law enforcement and police services.

5. Defendants P. O. John Portlock, DSN-141, P.O. Kevin Stewart, DSN-026, P.O. Chris Wegman, DSN-175, and P.O. Sam Stark, DSN-222 were at all relevant times police officers with the Maryland Heights Police Department.

6. Defendants P.O. John Portlock, DSN-141, P.O. Kevin Stewart, DSN-026, P.O. Chris Wegman, DSN-175, and P.O. Sam Stark, DSN-222 were at all

relevant times acting under color of law as uniformed officers of the Maryland Heights Police Department.

7. On or about April 9, 2012 Stephens went to Plaintiff's home in St. Louis County looking for a certain 2006 Pontiac Grand Prix automobile which he believed or had been informed was owned by Plaintiff's son, Marlon Sanders, with the intention of arranging for its repossession at a later time.

8. The 2006 Pontiac Grand Prix automobile was not on the Plaintiff's premises on April 9, 2012 and Marlon Sanders was not there either.

9. That night between 10:15 and 10:20 p.m. Patricia Sanders was driving home when she saw Stephens standing at the top of her driveway with a flashlight and a clipboard.

10. As Patricia Sanders drove into her driveway she paused, rolled down the window and asked Stephens if she could be of assistance.

20. Stephens said he was searching for a particular Pontiac automobile and asked questions.

11. Patricia Sanders responded that the Pontiac was not there at the Plaintiff's home, refused to answer any other questions, and told Stephens to leave; then she rolled up the window to her car and drove down the driveway into her garage, which is attached to Plaintiff's home.

12.     When the garage door opened, Stephens attempted to look into the garage with a flashlight.

13.     Patricia Sanders twice told Stephens to leave, but he suggested she was hiding something and persisted in asking her questions until she closed the garage door.

14.     Patricia Sanders attempted to call the police by dialing 911 on her mobile phone, but the call did not go through.

15.     Patricia Sanders walked through the house, told her husband there was a stranger on the property who would not leave, observed Stephens on the driveway by the garage, and told her husband he was still there.

16.     Plaintiff Melvin Sanders asked his wife, Patricia Sanders, to telephone the police, and she responded that she had tried to call once with her mobile phone, but the call was "dropped."

17.     Plaintiff Melvin Sanders walked to the garage, opened the door, spoke briefly with Stephens and told Stephens to leave.

18.     Stephens did not leave, and Plaintiff Melvin Sanders went back in and retrieved a revolver.

19.     Plaintiff Melvin Sanders has, and had at all relevant times, a permit to own and carry a weapon.

20. Melvin Sanders displayed the revolver, ordered Stephens to leave his property and told Stephens his wife was calling the police.

21. Stephens started to walk back up the driveway, and as he did so, he told Plaintiff Melvin Sanders that he would also call the police.

22. Stevens called 911 and spoke with a dispatcher with the Maryland Heights Police Department.

23. As Stephens walked up the driveway, Plaintiff Melvin Sanders again went back inside the house, put down the revolver, picked up a jacket, and returned to the driveway,

24. Stephens stayed on the street near the top of the Plaintiff's driveway, remained in contact with the Maryland Heights Police Department, and told the dispatcher that Plaintiff Melvin Sanders did not have a gun or other weapon.

25. The dispatcher in turn, informed the Police Officers who were on their way to Plaintiff's residence that Plaintiff had gone into the garage and returned to the driveway with no gun or other weapon; and/or it was apparent that Plaintiff Melvin Sanders did not have or was not displaying a gun or other weapon.

26. In due course five or six officers of the Maryland Heights Police Department arrived in police cars with emergency lights flashing.

27. Defendants Portlock, Stewart, Wegman, and Stark ignored Stevens at the top of the driveway and converged on Plaintiff Melvin Sanders, some with

5

weapons drawn, even though it was apparent that Plaintiff Melvin Sanders did not have or was not displaying a gun or other weapon.

28. Plaintiff Melvin Sanders was seized by Defendants Portlock, Stewart, Wegman, and Stark, his body was searched, he was placed in handcuffs, and he was threatened with a gun or Taser pointed at his dead.

29. Plaintiff Sanders and his wife are black or African American while Stephens and the Defendant Police Officers are white or Caucasian.

30. Plaintiff Melvin Sanders complained that he was being man-handled, threatened and treated badly by the police while Defendant Stephens received no attention; and he requested that the handcuffs be removed, and the emergency lights on the police cars be turned off.

31. Plaintiff Melvin Sanders informed the Defendant Police Officers where he had placed his revolver and one of them took it and removed the ammunition.

32. Before Stephens and the Defendant Police Officers left Plaintiff's home, or shortly thereafter, one or more of the Defendant Police Officers used their authority to search government records at that hour to determine whether or not the 2006 Pontiac Grand Prix automobile was at Plaintiff's residence and/or otherwise associated with Plaintiff and conducted an investigation to discredit Plaintiff and assist repossession agent Stephens.

6

33.     The conduct of Defendants as set out above was outrageous because of Defendants' evil motive or reckless indifference to the rights of others.

34.     There was at all relevant times, a statute in effect, 42 U.S.C. §1983 *et seq,* which reads in part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution, and laws, shall be liable to the party injured in an action at law . . . for redress . . .

42 U.S.C. §1983.

35.     There also was at relevant times a statute in effect in Missouri Section 590.650, R.S.Mo., which requires that an agency such as the City of Maryland Heights establish guidelines for its police officers and provide instruction for them to promote understanding and respect for racial and cultural differences and provide for the development of effective, non-combative methods of carrying out law enforcement duties in a racially and culturally diverse environment.

36.     Defendants Portlock, Stewart, Wegman and Stark, in their individual capacity and in their official capacity, deprived Plaintiff of the rights, privileges or immunities secured for him and other citizens by the Constitutions and laws of the United States and Missouri, including, but not limited to, the Fourth and

Fourteenth Amendments to the Constitution of the United States, in violation of 42 U.S.C. §1983, *et seq.,* on April 9, 2012 by physically and verbally abusing him, subjecting him to a public and unreasonable search, placing him in handcuffs, pointing a Taser or other weapon at his head, threatening him and using excessive force when he was standing on the driveway of his home under circumstances when Defendant Police Officers were reliably informed and/or it was apparent that Melvin Sanders did not have a gun or was not displaying a gun and Plaintiff was not otherwise armed or threatening violence and when Plaintiff was not otherwise engaged or likely to engage in any dangerous or illegal activity; and by selectivity using their authority against Plaintiff and in favor of the repossession agent Dennis R. Stephens; all because of Plaintiff's race and/or without probable cause.

37.     Defendant City of Maryland Heights also deprived Plaintiff of the rights, privileges or immunities secured for him by the Constitution and laws of the United States and the State of Missouri in violation of 41 USC §1983 in one or more of the following respects in that:  it failed to provide training and instruction to Defendant Officers and other police officers, including but not limited to that which was required by Section 590.650 R.S.Mo., so that an officer would not verbally abuse, detain, handcuff, or threaten an individual under the circumstances which existed on Plaintiff's driveway the night of April 9, 2012, and would not selectively use the power and authority of a uniformed, armed police officer or use

excessive force against a citizen because of the individual's race; and/or it failed to adopt and enforce a policy to prevent or mitigate against such abuse.

38. As the direct and proximate result of the violation of Section 1983 by Defendant City of Maryland Heights as set out above, Plaintiff Melvin Sanders has suffered assault; physical abuse; fear of police activity and possible criminal charges; embarrassment and humiliation due to the presence of police officers at his home with emergency lights; embarrassment and humiliation due to being accosted by armed police officers, handcuffed and searched in open view on the driveway of his own home; and mental and emotional distress.

**WHEREFORE**, Plaintiff Melvin Sanders prays for judgment in his favor and against City of Maryland Heights, Missouri for nominal damages, actual damages in excess of Seventy Five Thousand Dollars ($75,000.00), exemplary or punitive damages in an amount sufficiently large to deter Defendants and others, reasonable attorneys' fees and his costs.

## COUNT II

### Section 1983 – Individual Officers-Official Capacity

**COMES NOW** Plaintiff Melvin Sanders and for Count II of his Complaint against Defendants P.O. John Portlock, DSN-141; P.O. Kevin Stewart, DSN-026; P.O. Chris Wegman, DSN-175; and P.O. Sam Stark, DSN-222 states as follows:

1-37.  Plaintiff repeats, realleges and incorporated by reference herein paragraphs 1-37 of Count I as paragraphs 1-37 of Count II of this Complaint.

38.  As the direct and proximate result of the violation of Section 1983 by Defendant Maryland Heights Police Officers as set out above, Plaintiff Melvin Sanders has suffered assault; physical abuse; fear of police activity and possible criminal charges; embarrassment and humiliation due to the presence of police officers at his home with emergency lights; embarrassment and humiliation due to being accosted by armed police officers, handcuffed and searched in open view on the driveway of his own home; and mental and emotional distress.

**WHEREFORE**, Plaintiff Melvin Sanders prays for judgment in his favor and against Defendants P.O. John Portlock, DSN-141; P.O. Kevin Stewart, DSN-026; P.O. Chris Wegman, DSN-175; and P.O. Sam Stark, DSN-222, acting in their official capacity, for nominal damages, actual damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exemplary or punitive damages in an amount sufficiently large to deter Defendants and others, reasonable attorneys' fees and their costs.

## COUNT III

**Section 1983 – Individual Officers-Individual Capacity**

**COMES NOW** Plaintiff Melvin Sanders and for Count III of his Complaint against Defendants P.O. John Portlock, DSN-141; P.O. Kevin Stewart, DSN-026; P.O. Chris Wegman, DSN-175; and P.O. Sam Stark, DSN-222 states as follows:

1-37.   Plaintiff repeats, realleges and incorporated by reference herein paragraphs 1-37 of Count I as paragraphs 1-37 of Count III of this Complaint.

38.   As the direct and proximate result of the violation of Section 1983 by Defendant Maryland Heights Police Officers as set out above, Plaintiff Melvin Sanders has suffered assault; physical abuse; fear of police activity and possible criminal charges; embarrassment and humiliation due to the presence of police officers at his home with emergency lights; embarrassment and humiliation due to being accosted by armed police officers, handcuffed and searched in open view on the driveway of his own home; and mental and emotional distress.

**WHEREFORE**, Plaintiff Melvin Sanders prays for judgment in his favor and against Defendants P.O. John Portlock, DSN-141; P.O. Kevin Stewart, DSN-026; P.O. Chris Wegman, DSN-175; and P.O. Sam Stark, DSN-222, acting in their individual capacity, for nominal damages, actual damages in excess of Seventy-Five Thousand Dollars ($75,000.00), exemplary or punitive damages in an amount sufficiently large to deter Defendants and others, reasonable attorneys' fees and his costs.

        **THE PERRON LAW FIRM, P.C.**
        <u>**/s/  *Martin L. Perron*** </u>
        MARTIN  L. PERRON #26783 MO
        MARIA V. PERRON  #31739 MO
        275 N. Lindbergh Boulevard
        St. Louis, MO 63141-7809
        (314) 993-4261
        (314) 993-3367 (Fax)
        *Attorneys for Plaintiffs*